FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MOSES PEREZ and DEE PEREZ,<br><br>*Plaintiffs,*<br><br>v.<br><br>K&B TRANSPORTATION, INC. and KIARA WHARTON,<br><br>*Defendants.* | Case No. 1:17-cv-02610<br><br>Judge Hon. Rebecca R. Pallmeyer |

## PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS

NOW COME the Plaintiffs, MOSES and DEE PEREZ, by and through their attorney, GEORGE BRUGESS, and for their Statement of Additional Material Facts, states as follows:

### TESTIMONY OF TRUCK DRIVER KIARA WHARTON (Exhibit A)

1. Kiara Wharton was hauling a critical customer load at the time of the wreck on January 20, 2016. (Exhibit A – Deposition of Kiara Wharton, page 6-7).

2. If the load is late, she gets fired automatically. (Exhibit A, page 9-11).

3. Wharton became a truck driver in 2014. (Exhibit A, page 25).

4. Wharton went to work for the defendant K&B in2015. (Exhibit A, page 31).

5. Wharton was driving less than two years at the time of the wreck in January 2016. (Exhibit A, page 33).

6. Wharton had only driven a truck in snowy conditions twice before the wreck in January 2016. (Exhibit A, page 33).

7. As a truck driver Wharton believes the number one rule is safety and a professional driver requires special driving training. (Exhibit A, page 34).

8. Wharton was told on a frequent basis to drive slowly in inclement weather conditions. (Exhibit A, page 35).

9. Wharton keeps a copy of the Federal Motor Carrier Safety Regulations in the truck. (Exhibit A, page 36).

10. It is Wharton's obligation as a trucker in charge of an 80,000-pound vehicle to be in control of her vehicle. (Exhibit A, page 37).

11. The Federal Motor Carrier Safety Regulations (FMCSR) are industry standards that Wharton has to follow. (Exhibit A, page 40-41).

12. A fully loaded truck takes about half a football field (150 feet) at 55 mph to stop, and about 10-15 seconds. (Exhibit A, page 52).

13. In snow and ice conditions, you would have to start braking "way earlier." (Exhibit A, page 52).

14. The FMCSR require that speeds shall be reduced when such conditions exist. (Exhibit A, page 53).

15. Wharton has to anticipate what other drivers might do. (Exhibit A, page 54).

16. The rules say you can drive for 11 hours in a 14-hour period, then you have to be off for 10 hours. (Exhibit A, page 58).

17. The weather conditions on the day of the accident were slick and icy. (Exhibit A, page 64).

18. It was dark out. (Exhibit A, page 64).

19. Wharton had picked up a load in Waterloo, Iowa at Tyson Foods. (Exhibit A, page 68).

20. Wharton's truck weighed around 76,000 pounds. (Exhibit A, page 69).

21. Wharton's truck was in third or fourth gear at the time of the accident. (Exhibit A, page 69).

22. Wharton did not notice it to be slick that morning, but "everybody was driving slowly". (Exhibit A, page 71).

23. Wharton was going the speed limit before the accident 55 or 60 mph. (Exhibit A, page 71-72).

24. Wharton testified "something might happen with the trailer" so don't make a panic stop by hitting the brakes really hard. (Exhibit A, page 74).

25. Wharton testified that you adjust "following distance" to compensate for roadway conditions that would not allow a vehicle to stop as quickly as it could. (Exhibit A, page 74-75).

26. Wharton receives Qualcomm messages on her truck that detail her work. (Exhibit A, page 79-80).

27. The Qualcomm message said the delivery to Meijer was a critical customer load. (Exhibit A, page 82).

28. Wharton received 11 Qualcomm messages that morning giving her times and routes, the goal of which was to make sure she arrived on time at the customer. (Exhibit A, page 83-84).

29. Wharton arrived at the consignee at 3:40 am on January 19 (the day before the accident). (Exhibit A, page 85).

30. Wharton went off duty on Jan 19 at 7:38 am; then rested in her sleeper for 9 hours and 48 minutes. (Exhibit A, page 97-98).

31. Wharton drove for 9 hours and 20 minutes on Jan. 19. (Exhibit A, page 98).

32. Wharton drove for four hours and ten minutes on Jan. 20, the day of the accident. (Exhibit A, page 98).

33. Wharton was stuck in a traffic jam due to another accident just before her accident with Perez. (Exhibit A, page 102).

34. Wharton left Urbana at 2:54 am on the day of the accident. (Exhibit A, page 107, 149-150).

35. Wharton was given arrival times for 3:00 am Central for Urbana, Illinois on Jan. 20 and 4:00 am Eastern for Newport, Michigan on Jan. 21. (Exhibit A, page 109-110).

36. Wharton drove in the right lane the entire time. (Exhibit A, page 111).

37. Wharton does not know how fast she was driving in the moments before the wreck. (Exhibit A, page 112).

38. Perez was in the same right lane as Wharton, directly ahead of her. (Exhibit A, page 113).

39. The only other vehicle was a pickup truck to her left, int the left lane slightly ahead of Wharton. (Exhibit A, page 113).

40. Wharton noticed the moment Perez spun out, but Wharton did not panic brake, she "just started nicely braking." (Exhibit A, page 113).

41. As Wharton was braking, she felt her tractor sliding, so she eased up on the brakes even more. (Exhibit A, page 114).

42. Wharton was taught to brake on ice and snow, "five seconds, let up, five seconds, let up." (Exhibit A, page 114).

43. Prior to the collision Wharton was watching the pick-up truck to her left because it was doing "some weird back and forth type thing". (Exhibit A, page 118).

44. Wharton recalled the accident as, Perez spun out, he made it to the left side of the highway, Perez came to a complete stop, Perez was facing south when he stopped, then Perez

started up and cut across into the right lane, going south in the eastbound lane, right in front of Wharton, and Wharton hit the rear passenger side of Perez vehicle. (Exhibit A, page 113-120).

45. The front passenger side of Wharton's truck collided with the "back part where the license plate is" part of Perez vehicle. (Exhibit A, page 120-121).

46. Wharton believes the weather conditions contributed to the accident, for Perez, not her. (Exhibit A, page 123).

47. Wharton trains herself mentally, "do not hit the brakes, do not hit the brakes". (Exhibit A, page 123).

48. The first person Wharton called after the accident was her employer, K&B. (Exhibit A, page 124).

49. K&B told her to go see if Perez was ok and to call 911. (Exhibit A, page 125).

50. Wharton held the passenger door open so Perez could climb out; it was really hard to do. (Exhibit A, page 125).

51. The critical event was automatically recorded because of the hard impact; it was a hard impact. (Exhibit A, page 127).

52. Wharton cannot estimate how fast she was going at the time of the collision. (Exhibit A, page 129-130).

53. Wharton was able to do at least four rounds of five seconds on, five seconds off between seeing Perez start to spin and when she caught up to Perez. (Exhibit A, page 134).

54. It was at least 20 seconds from the time Perez started to spin out to impact. (Exhibit A, page 135).

55. Wharton testified that prior to seeing Perez spin out, she was not sure she was going 55 mph, but she was sure she was not going faster than 60 mph. (Exhibit A, page 162-163).

5

56. The speed limit was 55 mph there. (Exhibit A, page 163).

57. When Wharton first saw Perez spin out Perez was about a truck length of distance between the vehicles. (Exhibit A, page 164).

58. Wharton saw that Perez was going slower than 55 mph, he was going slower than Wharton. (Exhibit A, page 164).

59. Wharton testified that safety is important because she could kill someone. (Exhibit A, page 178).

60. Wharton is supposed to slow down, give more following distance and drive at or below the speed limit with respect to other people on the road. (Exhibit A, page 178).

61. Wharton testified it is the practice at K&B to insure the safety of other drivers on the road. (Exhibit A, page 178-179).

62. Wharton had not received the weather report for that day from K&B at the time of the accident. (Exhibit A, page 182).

63. It was still dark out when the accident occurred. (Exhibit A, page 183).

64. The pick-up truck in the lane to the left of her was keeping pace with Wharton when she saw Perez stopped on the left shoulder. (Exhibit A, page 189).

**TESTIMONY OF PLAINTIFF MOSES PEREZ (Exhibit B)**

65. The accident happened at I80 and 294. (Exhibit B – Deposition of Moses Perez, page 29).

66. It was still dark out at the time of the accident. (Exhibit B, page 30).

67. It was snowy, windy and the road was covered with snow and black ice; there was 2-3 inches of snow on the road. (Exhibit B, page 30).

68. The roadway has six lanes at that location; two for I-PASS and four for cash tolls. There is a wall separating the I-PASS lanes from the pay lanes. (Exhibit B, page 31-32).

6

69. Perez was in the right I-PASS lane. (Exhibit B, page 32).

70. Perez was going 15 to 30 mph through the I-PASS lanes. (Exhibit B, page 33).

71. Perez had made it through the I-PASS, but the two I-PASS lanes had not merged with the four toll lanes yet at the location of the accident. (Exhibit B, page 33).

72. Perez hit the black ice and started spinning towards the wall on the right. (Exhibit B, page 35-36).

73. The next thing he knew he was "whacked" from the back and his vehicle ended up against the wall on the right. (Exhibit B, page 35-36).

74. Perez was traveling slower than the posted limit because of the snowy road conditions. (Exhibit B, page 79-80).

75. It was about three seconds between the time he lost traction and was hit. (Exhibit B, page 82, 91)

76. The truck was about 60 or 70 feet behind him when he started to swerve. (Exhibit B, page 86).

77. His vehicle swerved to the right, clockwise. (Exhibit B, page 87).

78. Based on the force of the impact, Perez believes the defendant was speeding. (Exhibit B, page 100).

79. Everyone was driving slowly, except the defendant. (Exhibit B, page 101).

80. 55 mph on the day of the accident was an unsafe speed given the road conditions. (Exhibit B, page 105).

### TESTIMONY OF TROOPER STEPHEN KENNY (Exhibit C)

81. The accident was investigated by Officer Kenny of the Illinois State Police, and he completed the police report marked as Exhibit D herein. (Exhibit C, pgs. 20-21)

## POLICE REPORT (Exhibit D)

82. According to the report it was snowing at the time of the accident.

83. The total vehicle length of the truck was 65 feet.

84. The point of first contact with the Perez vehicle was the rear.

85. The point of first contact with the truck was the front.

## PHOTOGRAPHS (Exhibit E)

86. Photographs of the damage to the Perez vehicle and defendant vehicle are attached.

## I-PASS TIME STAMPS FOR PEREZ AND DEFENDANT (Exhibit F)

87. According to toll records, Perez went through the toll at 5:18:11 and Wharton went through the toll at 5:18:16, five seconds later.

## AFFIDAVIT OF HADAS BENHAMOU (Exhibit G)

88. The Affidavit of Hadas Benhamou.

Respectfully submitted,

By: /s/ George Brugess

John M. Power
George Brugess
COGAN & POWER, P.C.
1 E. Wacker Drive, Suite 510
Chicago, IL 60601
Telephone: 312-477-2500
Fax: 312-477-2501
jpower@coganpower.com
gbrugess@coganpower.com
*Attorneys for Plaintiffs*
*MOSES PEREZ and DEE PEREZ*

# CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that a true and correct copy of **PLAINTIFFS' STATEMENT OF ADDITIONAL MATERIAL FACTS** was properly forwarded to all counsel of record as listed below by:

\_\_\_\_\_ United States Mail, postage prepaid and sealed;
\_\_\_\_\_ United States Certified Mail, postage prepaid and return receipt requested;
\_\_\_\_\_ Hand Delivery;
\_\_\_\_\_ UPS / Next Day Air;
\_\_\_\_\_ Facsimile Transmission;
\_X\_\_\_ Local Rule 5.9 Electronic Filing (U.S.D.C., ND IL); and/or
\_\_\_\_\_Email (pdf)
on June 13, 2018.

Kathleen McDonough
Lamis G. Eli
Wilson Elser Moskowitz Edelman & Dicker LLP
55 W. Monroe Street, Suite 3800
Chicago, IL 60603
(312) 704-0550
(312) 704-1522 (Fax)
(312) 821-6114 (Kathleen Direct)
(312) 821-6105 (Lamis Direct)
Kathleen.mcdonough@wilsonelser.com
Lamis.eli@wilsonelser.com
Gail.serritella@wilsonelser.com
**For Defendants K&B Transportation, Inc. and Kiara Wharton**

/s/George Brugess

John M. Power
George Brugess
COGAN & POWER, P.C.
1 E. Wacker Drive, Suite 510
Chicago, IL 60601
Telephone: 312-477-2500
Fax: 312-477-2501
jpower@coganpower.com
gbrugess@coganpower.com
*Attorneys for Plaintiffs*
*MOSES PEREZ and DEE PEREZ*