# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| PEREZ ET AL, <br><br> Plaintiff, <br><br> v. <br><br> K&B TRANSPORTATION, INC. and KIARA WHARTON, <br><br> Defendants. | No. 17 cv 2610 <br><br> Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Moses Perez and Dee Perez sued K&B Transportation Inc. and Kiara Wharton for injuries Perez suffered after a collision on Interstate 294 on January 20, 2016.[1] The case was removed to this Court based on diversity jurisdiction. (Dkt. 1). Plaintiffs' amended complaint alleges negligence (Count I), willful and wanton conduct (Counts II and V), vicarious liability (Count III), negligent safety culture (Count IV), loss of consortium (Counts VI and VII), and Family Medical Expense Act (Count VIII). (Dkt. 37). Defendants moved for summary judgment on all counts. For the reasons set forth below, the motion for summary judgment [73] is granted.

## I.  Background

On January 20, 2016 around 5:18 am, Perez and Wharton were both driving eastbound on Interstate 294 in Thornton, Illinois when Wharton's commercial truck

---

[1] Plaintiffs are referred to collectively as "Plaintiffs" and for ease of reference, Moses Perez is referred to as "Perez". Defendants are referred to collectively as "Defendants", K&B Transportation Inc. as "K&B" and Kiara Wharton as "Wharton".

1

collided into Perez's Ford Explorer car. Plaintiffs claim that Perez suffered serious physical and emotional injuries as a result.

It is undisputed that Perez was ahead of Wharton in the same right I-Pass lane as her, that icy conditions caused Perez's car to spin out before Wharton's truck ran into him, and that Perez has no recollection of Wharton's truck before the moment of the collision. (Dkt. 93, ¶¶14, 27; Dkt. 82, ¶¶9, 11). Although Wharton did not know how fast she was driving before the accident, it is undisputed that her truck was in third or fourth gear at the time of the accident. (Dkt. 93, ¶¶8, 13). The parties also agree that the relevant speed limit was 55 miles per hour. (*Id.* ¶ 22).

There were only two witnesses to the accident: Perez and Wharton. The other Plaintiff, Dee Perez, Moses' wife, was not with him at the time of the accident. Other witnesses in the case are Claudio Lauciello, who saw both vehicles that morning but did not see the accident, Matthew Tipton, safety and compliance manager at K&B, and Chris Schrunk, night supervisor at K&B. Plaintiffs also submitted two expert reports. For the reasons discussed below, the Court declines to consider their opinions in deciding the summary judgment motion.

## II. Summary Judgment Standard

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine factual dispute exists when there is enough evidence that a reasonable jury could find in favor of the nonmoving party. *Whiting v. Wexford Health Sources*,

Inc., 839 F.3d 658, 661 (7th Cir. 2016); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In construing the evidence and facts supported by the record in favor of the non-moving party, the Court gives the non-moving party "the benefit of reasonable inferences from the evidence, but not speculative inferences in [its] favor." *White v. City of Chi.*, 829 F.3d 837, 841 (7th Cir. 2016) (internal citations omitted).

Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 323; *see also White*, 829 F.3d at 841 (summary judgment warranted where a reasonable juror could not find in favor of the non-moving party "on the evidence submitted in support of and opposition to the motion for summary judgment.") (internal citation omitted).[2]

## III. Discussion

This case is about an unfortunate accident on Interstate 294 on an early winter morning. Plaintiffs cannot survive summary judgment because the evidence shows, as Perez admitted both right after the accident and in his deposition, that icy conditions caused his car to spin out of control. Plaintiffs have not provided any evidence that Wharton drove negligently or with intentional or reckless disregard for others.

---

[2] Because jurisdiction in this case is based on diversity of citizenship pursuant to 28 U.S.C §1332(a), Illinois substantive law controls. *Protective Life Insurance Co. v. Hansen,* 632 F.3d 388, 392 (7th Cir. 2011) (a federal court sitting in diversity applies the substantive law of the state in which it is sitting).

3

### A. Plaintiffs' Experts Adam Grill and Mike DiTallo

Plaintiffs submitted reports from commercial motor vehicle expert Adam Grill and accident reconstruction expert Mike DiTallo. Although factual disputes on summary judgment are resolved against the movant, "the question of admissibility of expert testimony is not such an issue of fact." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 143 (1997). *See also Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 704-05 (7th Cir. 2009) ("[W]e have repeatedly affirmed district courts that have made evidentiary rulings on proposed expert testimony in conjunction with summary judgment orders."). Having reviewed the experts' reports and depositions, the Court declines to consider their testimony in deciding the summary judgment motion.

The admissibility of expert testimony is governed by Federal Rules of Evidence 702 and 703 and the Supreme Court's *Daubert v. Merrell Dow Pharms.*, Inc., 509 U.S. 579 (1993) decision. In a three-step analysis, courts assess "whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue." *Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotations omitted). The burden is on the party seeking to admit the expert to show by a preponderance of the evidence that the expert satisfies Rule 702 and *Daubert*. *Id.* at 782. In their gatekeeping role, district courts have "significant discretion under the flexible *Daubert* inquiry." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 818 (7th Cir. 2012).

Defendants do not challenge the experts' qualifications, but argue that their opinions are speculative conclusions not based on the facts of the case. (Dkt. 110). The Court agrees. Plaintiffs have not met their burden to establish the admissibility of the opinions. Rule 702 requires expert testimony to be based on sufficient facts or data, to be the product of reliable principles and methods, and to show that the expert reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702.[3]

Grill's report (Dkt. 109-1, Exh. J) states that he reviewed "information" without providing specifics. The report cites to a number of regulations and trucking guidelines, but the only case-specific evidence it references is Trooper Kenny's crash report. Grill draws conclusions such as that Wharton "failed to look far enough ahead to perceive any road hazards in front of her", "failed to keep a safe and adequate distance between herself and the Perez vehicle", and "Wharton's collision was preventable." But Grill fails to explain the methodology he used to arrive at his opinions or the factual foundation for his opinions.

Grill was asked at his deposition for case-specific information underlying his opinions. When asked about how far ahead Wharton should have been able to see, Grill could not say. (Grill Dep. Dkt. 109-2 at p. 39). When asked what a safe following distance would have been for Wharton in this case, he could not say. (*Id.* at p. 56). When asked what "traffic" he referred to in his report, he responded, "generally, just other vehicles, so somewhere like an interstate in Illinois, I would expect there to be other traffic." (*Id.* at p. 43). When asked for the basis for his opinion that Wharton

---

[3] Plaintiffs' "Sur Sur Response" does not address Defendants' challenge to Plaintiffs' experts. (Dkt. 126).

exhibited characteristics of an "aggressive driver," Grill explained that she was "probably driving too fast, probably not maintaining a safe following distance, probably not keeping a proper lookout." (*Id*. at p. 76). Grill also agreed that certain statements in his expert report were irrelevant to the facts of this case. (*Id*. at pp. 80-81). In addition, Grill's explanation for his opinion that Wharton risked a late delivery was based on speculation. (*Id*. at pp. 84-94).

DiTallo's report (Dkt. 109-3, Exh. L) fares no better. First his report expressly states that "there is not enough data to perform a detailed crash reconstruction in this matter." Nevertheless, DiTallo concludes, based on "my review of the materials, testimony evidence and my analysis" that Perez's testimony concerning how the collision occurred "is possible." He then goes on to determine, again based on his unexplained analysis, that Ms. Wharton's description of the collision, specifically the speed she was travelling, "is not possible based on the available time [to stop]." (Exh. L at 6).

At his deposition, DiTallo stressed that his analysis was limited because of the limited evidence available to him. *See e.g*. Dkt. 109-4 at p. 54 ("I didn't try to calculate the impact speeds because I couldn't."); *Id*. at 57 ("I haven't come to an opinion on how the accident occurred"). Instead, based on the deposition testimonies, Google Earth, and photographs of the car and truck, DiTallo determined what he described as the probability of "is this possible or not possible." (*Id*. at p. 61). He explained, "because I'm not able to do a time-distance analysis and understand impact speeds and do that detailed crash reconstruction, I haven't been critical of either driver

6

[Perez or Wharton]. I only looked at their testimony to see, based on science, if it's possible." (*Id*. at p. 132). He also conceded, "I don't know whether or not Ms. Wharton could have avoided impacting the SUV." (*Id*. at 133).

The Court cannot conclude that the "soundness and care" with which the experts arrived at their opinions meets *Daubert* standards or that their testimony is sufficiently grounded in the facts of this case. *C.W. v. Textron, Inc.*, 807 F.3d 827, 834 (7th Cir. 2015) (internal citations and quotations omitted); *Daubert*, 509 U.S. at 591. Therefore Plaintiffs have not met their burden to show the experts' opinions are admissible, and the Court will not consider their opinions on summary judgment.

### B. Negligence - Wharton (Count I) and Vicarious Liability – K&B Transportation (Count III)

To prevail on the negligence claim, Perez must show that Wharton owed him a duty, breached that duty, and the breach proximately caused his resulting injuries. *See Bermudez v. Martinez Trucking,* 343 Ill. App. 3d 25, 29 (Ill. App. Ct. 2003). Defendants do not dispute the existence of a duty, but argue that Plaintiffs failed to show any genuine issue of fact that Wharton was negligent. According to Defendants, Perez's spinning out on the highway created a "sudden emergency," giving Wharton no time to respond and making the accident unavoidable. Defendants further argue that Wharton's truck was a "condition", not the cause of the accident, and therefore not the proximate cause of Perez's injuries. (Dkt. 71 at 6–8).

#### *1. Wharton's Driving*

Plaintiffs' negligence claim is largely based on alleged violations of the Illinois statutes 625 ILCS 5/11-601 and 5/11-701 and the Federal Motor Carrier Safety

7

Regulations ("FMCSR").[4] Plaintiffs' theories are that Wharton was driving over the 55 mile per hour speed limit and that given the wintery conditions and her load, she should have been driving slower and slowed down more before hitting Perez.

Plaintiffs do not have evidence of Wharton speeding, driving recklessly or negligently, or otherwise violating the FMCSR. "The mere happening of an accident does not entitle a plaintiff to recover. A plaintiff must come forward with evidence of negligence on the part of defendant and with evidence that the defendant's negligence was a proximate cause of the plaintiff's injuries." *Wash v. Benchmark Constr. Co.*, 2014 IL App (1st) 132771-U, ¶ 23 (Ill. App. Ct. 2014) (internal citations and quotations omitted) (emphasis in original). *See also Rodriguez v. Valios*, 2016 IL App (1st) 152497-U, ¶ 19 (Ill. App. Ct. 2016) ("Courts do not view a party's acts with hindsight.") (citation omitted).

Plaintiffs contend that Wharton was "hauling a fully loaded tractor trailer weighing over 80,000 lbs through icy conditions traveling between 55-60 miles per hour." (Dkt. 126 at 5). But Wharton did not testify that the trailer weight was over 80,000 lbs or that she was driving between 55-60 miles per hour.

---

[4] The relevant section of the FMCSR is Section 392.14: "extreme caution in the operation of a commercial motor vehicle shall be exercised when hazardous conditions, such as those caused by snow, ice, sleet, fog, mist, rain, dust, or smoke, adversely affect visibility or traction. Speed shall be reduced when such conditions exist." Plaintiffs concede there is no evidence to support their allegations of Wharton using her cell phone at the time of the accident (Section 392.82) or falsifying of driving logs related to this incident (Section 395.8). (Dkt. 83 at 3). Plaintiffs also do not offer evidence that conditions on the morning of the accident were "sufficiently dangerous" to require Wharton to stop driving altogether. (see Section 392.14).

8

Wharton was clear at her deposition that she did not know her speed leading up to the accident but knew she would not have been going over the speed limit. (Wharton Dep. (Dkt. 71-2, Exh. C) at 162). Plaintiffs argue that it is "undisputed" that Wharton was speeding. (Dkt. 83 at 2). Plaintiffs rely on one sentence of her testimony where when pressed about if she was going 55 mph, she responded "I'm not for sure, but I know I wasn't going faster than 60." (*Id*. at 163). This is not enough to defeat summary judgment. *See Albert v. Bank of Am., N.A.*, 2016 U.S. Dist. LEXIS 18570, at *15 (N.D. Ill. Feb. 9, 2016) ("[That defendant] did not have a specific memory…is not a basis to conclude that he did the very thing he does not recall doing. To hold otherwise would constitute the kind of conjecture that Illinois law forbids."). The Seventh Circuit has consistently stated that speculation does not defeat summary judgment. "[I]nferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Carmody v. Bd. of Trs. of the Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (internal citations and quotations omitted); *see also Piotrowski v. Menard*, Inc., 842 F.3d 1035, 1039 (7th Cir. 2016).

Plaintiffs next argue that Lauciello "had no doubt a collision occurred" even though he did not see the accident. But Lauciello testified that he did not see the accident and was focused on "getting out of there and staying on the road myself." (Lauciello Dep., Dkt. 126-2) at 37).

Finally Plaintiffs rely on Perez's speculation at his deposition that Wharton was speeding. But he admitted he did not remember what the speed limit was, did not know what speed Wharton was going and did not see Wharton's truck until right

before the impact. (Moses Dep. (Dkt. 71-2, Exh. D) at pp. 33, 98–100). His belief that she was driving over the speed limit was based only on the "impact that I got." (*Id.* at p. 100). In their amended statement of additional material facts (Amended Fact Statement), Plaintiffs conclude that "55 mph on the day of the accident was an unsafe speed given the road conditions." (Dkt. 91, ¶36). This is a conclusion, not a statement of fact, and is supported only by citation to Perez's testimony, which as discussed, was based on speculation. *See Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) ("We do not allow parties to send every speculation that they have to the jury despite an absence of evidence."); *F.T.C. v. Bay Area Bus. Council, Inc.*, 423 F.3d 627, 633 (7th Cir. 2005) (a court ruling on summary judgment need not search record "looking for factual disputes").

By contrast, Wharton provided an affidavit stating that at the time of impact she was driving between third and fourth gear, and based on her knowledge, experience, and inspection, the type of truck she was driving travels at a speed as low as 10 miles per hour in third gear and as high was 15 miles per hour in fourth gear. (Wharton Aff., Dkt. 93-1). Therefore, her speed at the time of the accident was between 10 and 15 miles per hour. (*Id.*). Plaintiffs do not offer evidence to contradict this testimony about her speed at the time of impact.

### 2. *Proximate Cause*

> The term proximate cause encompasses two distinct requirements: cause in fact and legal cause. The first requirement, cause in fact, is present when there is a reasonable certainty that a defendant's acts caused the injury or damage....The second requirement, legal cause, is established only if the defendant's conduct is so closely tied to the plaintiff's injury that he should be held legally responsible for it...

*Young v. Bryco Arms*, 213 Ill. 2d 433, 446 (Ill. 2004) (internal citations and quotations omitted). "[S]ummary judgment is appropriate where the facts are undisputed and there is no difference in the judgment of reasonable [persons] as to the inferences to be drawn." *Walker v. Macy's Merch. Grp., Inc.*, 288 F. Supp. 3d 840, 857 (N.D. Ill. 2017) (internal citation and quotations omitted). *See also Wash*, 2014 IL App (1st) 132771-U, ¶ 23 ("Proximate cause may not be based upon 'mere speculation, guess, surmise or conjecture.'"). In addition, "Illinois courts draw a distinction between a condition and a cause. Indeed, if the negligence charged does nothing more than furnish a condition by which the injury is made possible, and that condition causes an injury by the subsequent, independent act of a third person, the creation of the condition is not the proximate cause of the injury." *First Springfield Bank & Tr. v. Galman*, 188 Ill. 2d 252, 257 (Ill. 1999).

It is undisputed that Perez's car spun out on the highway due to icy conditions. The testimonies of Perez, Wharton, and Lauciello were all consistent that Perez's car spun out of control. Also consistent with these testimonies is Trooper Kenny's crash report.[5] Indeed Perez specifically explained that he was "losing control of my vehicle" and "spinning around" and did not regain control of his vehicle before impact. (Moses

---

[5] Kenny's crash report stated in part: "Unit 1 [Perez] and Unit 2 [Wharton] were traveling through Plaza 45 in the open road toll lanes. Unit 1 driver stated that he lost control in the icy conditions and was struck from behind by Unit 2. Unit 2 driver stated that Unit 1 lost control, spun out, and entered her lane. Unit 2 driver sated that she could not avoid a collision." (Dkt. 84-8 at 3). Plaintiffs argue that Defendants cannot rely on Trooper Kenny's deposition testimony because he is not an accident reconstructionist. The Court agrees that his testimony is not expert opinion evidence. But his police report, recorded shortly after the accident, is further factual evidence supporting Defendants' summary judgment motion.

11

Dep. at pp. 34–35, 83, 87–88). He testified that his vehicle spun out on its own and before the impact with Wharton's truck. (*Id.* at pp. 98–99). Plaintiffs also point to photographs and toll records from the morning of the accident. Assuming the admissibility of this evidence, these do not create a genuine issue of fact that Wharton was negligent or proximately caused Perez's injuries. *Starzenski v. City of Elkhart*, 87 F.3d 872, 880 (7th Cir. 1996) ("a scintilla of evidence in support of the non-movant's position is insufficient to successfully oppose summary judgment; there must be evidence on which a jury could reasonably find for the plaintiff.").

Considering the undisputed evidence of Perez's car spinning out of control and the lack of any evidence of Wharton driving negligently, the only reasonable inference is that Perez's loss of control of his car caused the collision. The fact that Wharton was on the road that morning may have been a condition for Perez's injuries, but that is not enough to establish proximate cause.

In sum, Plaintiffs failed to show the existence of an issue of fact as to negligence or proximate cause. The Court therefore grants Defendants summary judgment on Plaintiffs' negligence claim (Count I). Finding summary judgment in Defendants' favor warranted on the negligence claim against Wharton, there is no basis for K&B to be held vicariously liable for Wharton's conduct (Count III). Summary judgment on Court III is granted in Defendants' favor as well.

### C. Willful and Wanton - Wharton (Count II)

Plaintiffs' claim that Wharton acted willfully and wantonly is based on the same facts alleged in their claim against her of negligence. Under Illinois law,

> "A wilful or wanton injury must have been intentional or the act must have been committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it or a failure to discover the danger through recklessness or carelessness when it could have been discovered by the exercise of ordinary care."

*Am. Nat'l Bank & Tr. Co. v. City of Chi.*, 192 Ill. 2d 274, 285 (Ill. 2000) (internal citations and quotations omitted). Plaintiffs have not provided evidence of Wharton's negligence to survive summary judgment and similarly have not provided evidence to meet a higher standard to show she acted with intention or reckless disregard for the safety of Perez or anyone else. Judgment is granted in Wharton's favor on Count II.

### D. Safety Culture and Willful and Wanton Conduct – K&B (Count IV and V)

Plaintiff challenges K&B's "safety culture" as negligent and charges K&B with acting willfully and wantonly by "aiding and abetting" Wharton to violate the FMCSR. Since the Court has found no triable issue about whether Wharton was negligent in violating the FMCSR, there is no basis to find that K&B aided and abetted Wharton in allegedly violating the FMCSR.

With regard to safety culture, Plaintiffs argue, citing only to Defendants' brief, that "defendants seem to concede [that] the evidence here is a clear narrative of K&B drivers working under impossible conditions that penalize and terminate drivers for failing to meet unreasonable delivery deadlines to critical clients." (Dkt. 83 at 10). That is a mischaracterization of Defendants' argument. Plaintiffs further state, in their Amended Fact Statement, that "According to K&B Transportation Inc's

handbook, if the load is late, [Wharton] gets fired automatically." (Dkt. 93 at ¶2). The only record cited is three pages of Wharton's deposition.

However Wharton did not state that "if the load is late, she gets fired automatically." In fact, she testified she did not remember the "two strike" rule.[6] When Plaintiffs' counsel refreshed her recollection with the K&B Handbook, she responded that she did *not* "really remember it being a two strike, if you are late, you get fired automatically type of thing." (Wharton Dep. at pp. 8–9). Even then, she said it was not a concern for her. (*Id*. at p. 10). Even if the Court agreed with Plaintiffs that K&B's two-strike rule is egregious, Plaintiffs demonstrated no link between the policy and Perez's alleged injuries that morning. Thus Plaintiffs' assertion that there is "no other rational explanation for the way Wharton was driving on the day of the accident" (Dkt. 83 at 10) has no basis in fact. Judgment is granted in K&B's favor on Counts IV and V.

### E. Loss of Consortium and Family Medical Expense Act – (Counts VI, VII and VIII)

Because summary judgment is warranted against Plaintiffs on their claims for negligence, willful and wanton conduct, and vicarious liability, there can be no recovery by Plaintiffs for loss of consortium or under the Family Medical Expense Act. Summary judgment is granted in favor of Defendants on Counts VI, VII, and VIII.

---

[6] Plaintiffs' counsel asked, "Do you know what the penalties are for failure to timely deliver to a critical customer?" Wharton responded, "That's never been discussed with me." (Wharton Dep. at p. 8).

## IV. Conclusion

For the reasons discussed, there is no genuine issue of material fact to submit to a jury and granting summary judgment is warranted. Defendants' Motion for Summary Judgment [73] is granted. Judgment is entered in favor of Defendants K&B Transportation Inc. and Kiara Wharton and against Plaintiffs Moses Perez and Dee Perez.

E N T E R:

Dated: September 30, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States District Judge